United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAMES BREGAN, et al., | Case No. 23-cv-01823-LB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS IN PART** |
| THE JOHN STEWART COMPANY, et al., | Re: ECF Nos. 15, 17 |
| Defendants. | |

## INTRODUCTION AND STATEMENT

The plaintiffs rented a home in the Presidio of San Francisco, a federal enclave administered by the Presidio Trust. In June 2021, the defendants allegedly performed a roof replacement without proper precautions, resulting in lead contamination from the home's lead paint, and then failed to properly remediate the contamination. The Bregan plaintiffs' young child tested positive for high lead levels in her blood.[1]

The plaintiffs sued five defendants in state court: Enterprise Roofing Service (the company that contracted with the Presidio Trust to perform the roof work) and a group of "landlord defendants" consisting of the Trust (the landlord in the plaintiffs' lease), The John Stewart

---

[1] Compl. – ECF No. 1-1 at 23–64. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 23-cv-01823-LB

1   Company (the Trust's agent in the lease), and Trust employees Mark Feickert and Van Cornwell.

2   The plaintiffs assert eleven state-law claims sounding in tort and contract. They sued in state court.

3   Because the Trust is a federal-government-owned corporation and Messieurs Feickert and

4   Cornwell are federal employees, the Trust and the United States removed the case to federal court

5   and the United States was substituted as a defendant for Messieurs Feickert and Cornwell.[2]

6          The federal defendants and Enterprise Roofing moved to dismiss the complaint. The federal

7   defendants moved under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter

8   jurisdiction. They contend mainly that under the doctrine of derivative jurisdiction, which holds that

9   federal courts sometimes lack jurisdiction in removed cases if the state court lacked jurisdiction, the

10  state court lacked jurisdiction because the federal government has not waived its sovereign

11  immunity for tort and contract claims in state courts. They contend in the alternative that (1) the

12  claims premised on violations of state and local statutes and ordinances (such as breach of the

13  implied warranty of habitability and the covenant of quiet enjoyment) fail because the federal

14  government has not waived its sovereign immunity for those claims, (2) the court lacks jurisdiction

15  over the tort claims to the extent they seek to hold the government liable for the conduct of the

16  independent-contractor defendants, and (3) the plaintiffs are not entitled to punitive damages or a

17  jury trial under the relevant federal statutes waiving sovereign immunity.[3]

18         Enterprise Roofing moved under Rule 12(b)(6) to dismiss (1) the negligent-infliction-of-

19  emotional-distress and nuisance claims as duplicative of the negligence claim and (2) the prayer for

20  attorney's fees and treble and punitive damages (based on state and local laws) as precluded by the

21  federal-enclave doctrine. It also moved under Rule 12(e) for a more definite statement about

22  whether the plaintiffs' minor daughter is a plaintiff.[4]

23

24

25

---

26  [2] *Id.*; Notice of Removal – ECF No. 1; Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2; Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3.

27  [3] Fed. Defs.' Mot. – ECF No. 17.

28  [4] Enter. Roofing's Mot. – ECF No. 15.

United States District Court
Northern District of California

All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[5] The court ordered supplemental briefing on certain issues raised by this complicated context.[6] The court held a hearing on November 30, 2023.

The court grants the federal defendants' motion in part. The case may proceed as removed notwithstanding the doctrine of derivative jurisdiction. The federal government has not waived its sovereign immunity for the claims that are based on violations of state and local statutes and ordinances. The plaintiffs are not entitled to a jury trial against the federal defendants or to punitive damages for their tort claims against those defendants. Finally, the court denies the motion to dismiss the tort claims predicated on the conduct of the independent-contractor defendants: (1) as to The John Stewart Company, there are no allegations of the government's vicarious as opposed to direct liability and the government may have owed non-delegable duties under the peculiar-risk doctrine; and (2) as to Enterprise Roofing, the federal defendants had direct control over Enterprise Roofing.

The court also grants Enterprise Roofing's motion in part. The negligent-infliction-of-emotional-distress and nuisance claims are duplicative of the negligence claim. The plaintiffs are not entitled to attorney's fees and under the federal-enclave doctrine, they cannot recover treble and punitive damages for economic injury (but can for personal injury). Finally, the court denies the motion for a more definite statement as moot because the plaintiffs' daughter is not a plaintiff.

## STANDARDS OF REVIEW

### 1.  Subject-Matter Jurisdiction — Rule 12(b)(1)

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

---

[5] Consents – ECF Nos. 9, 13, 14, 35.

[6] Order – ECF No. 53.

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). If the defendant mounts a factual attack, he may rely on "affidavits or any other evidence properly before the court," in which case it "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In such cases, "[t]he district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *Id.*

Dismissal of a complaint without leave to amend should be granted only when the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## 2.   Failure to State a Claim — Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

United States District Court
Northern District of California

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

### 1.  The Federal Defendants' Motion

The federal defendants first contend that under the doctrine of derivative jurisdiction, the court lacks jurisdiction because the state court lacked jurisdiction given that the United States has not waived its sovereign immunity for the plaintiffs' claims.[7]

---

[7] Fed. Defs.' Mot. – ECF No. 17 at 11–15.

1    The federal defendants removed the case under 28 U.S.C. §§ 1442 and 2679(d)(2).[8] Section

2    1442 "permits removal of a civil action against 'any officer (or any person acting under that

3    officer) of the United States or of any agency thereof . . . for or relating to any act under color of

4    such office.'" *DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023) (cleaned up). Regarding

5    § 2679(d)(2), "[u]nder the Federal Tort Claims Act, any civil action commenced in a state court

6    shall be removed to the U.S. district court upon the Attorney General's certification that [a federal]

7    defendant employee was acting within the scope of his office or employment." *Schmidt v.*

8    *Washington*, No. C12-1116 MJP, 2012 WL 3234482, at *1 (W.D. Wash. Aug. 7, 2012). After

9    removal and the Attorney General's certification, the United States is "substituted as the party

10   defendant." *Richardson v. United States*, No. 19-CV-05144-JSW, 2020 WL 13517515, at *2

11   (N.D. Cal. Jan. 24, 2020) (quoting 28 U.S.C. § 2679(d)(2)). Here, the certification was filed on the

12   same day as the notice of removal.[9]

13   Under the doctrine of derivative jurisdiction, a federal court is sometimes "without jurisdiction

14   over a suit removed to it from state court if the state court from which it was removed lacked

15   subject matter jurisdiction, even though the federal court would have had jurisdiction had the suit

16   been brought there originally." *Beeman v. Olson*, 828 F.2d 620, 621 (9th Cir. 1987) (citing

17   *Minnesota v. United States*, 305 U.S. 382, 389 (1939)). "The derivative-jurisdiction principle has

18   been heavily criticized, largely because it produced the anomalous result that a case within the

19   exclusive jurisdiction of the federal courts could not be removed to a federal court." 14C Wright &

20   Miller, Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed. 2023). Thus, "in 1986, Congress abolished

21   this rule" for cases removed under the general removal statute, 28 U.S.C. § 1441. *Id.*

22   The doctrine still applies to a removal under § 1442. *In re Elko Cnty. Grand Jury*, 109 F.3d 554,

23   555 (9th Cir. 1997); *FBI v. Super. Ct.*, 507 F. Supp. 2d 1082, 1090–92 (N.D. Cal. 2007). Whether it

24   applies to removals under § 2679(d)(2) "is more questionable." *E.R. ex rel. Young v. Sutter Davis*

25   *Hosp.*, No. CIV. 2:14-2053 WBS, 2014 WL 7239675, at *3 (E.D. Cal. Dec. 16, 2014). But although

26

27   _____
     [8] Notice of Removal – ECF No. 1 at 3 (¶ 6).

28   [9] Certification Pursuant to 28 U.S.C. § 2679(d) – ECF No. 2.

1    courts have reached different results, the statute provides that if a government employee "was acting

2    within the scope of his office or employment at the time of the incident out of which the claim

3    arose," then the case "shall be removed" to federal court. 28 U.S.C. § 2679(d)(2). Based on this

4    language, courts have held that the derivative-jurisdiction doctrine does not apply to § 2679(d)(2).

5    *Bryant v. Island Express Helicopters, Inc.*, No. CV208953FMOPVCX, 2021 WL 1734780, at *2

6    (C.D. Cal. May 3, 2021); *Johnson v. United States*, No. CV178125DMGMRWX, 2018 WL

7    5880138, at *2–3 (C.D. Cal. June 12, 2018). This is permissible even though federal courts have

8    exclusive jurisdiction over FTCA cases because, "[a]s the Supreme Court has noted," it is after

9    certification and removal that an action is "governed by the [FTCA]." *Bryant*, 2021 WL 1734780, at

10   *2 (quoting *Osborn v. Haley*, 549 U.S. 225, 230 (2007)). Also, as shown by Congress's eliminating

11   the derivative-jurisdiction doctrine for the general removal statute, Congress can provide for the

12   doctrine's applicability, so Congress's specifying in § 2679(d)(2) that cases can be removed is

13   dispositive.

14        The court thus holds that the derivative-jurisdiction doctrine does not apply to removals under

15   § 2679(d)(2). This holding stands even though the Ninth Circuit, in the unpublished case *Rodriguez

16   v. United States*, affirmed a dismissal of an FTCA action on derivative-jurisdiction grounds. 788

17   F. App'x 535, 536 (9th Cir. 2019). There, the government based its removal on § 1442, not

18   § 2679(d). *Id.*

19        The question remains whether — given that the federal defendants relied on both §§ 1442 and

20   2679(d) and the derivative-jurisdiction doctrine applies to removals based on § 1442 — a partial

21   dismissal is appropriate on the ground that certain claims or defendants are tethered to § 1442 as

22   opposed to § 2679(d)(2) (which permits removal of tort claims). In *Bryant* and *Johnson*, the

23   government "removed the action based on both §§ 2679(d) and 1442," and the result was that the

24   derivative-jurisdiction doctrine did not apply. *Bryant*, 2021 WL 1734780, at *2 n.7; *Anselmo v.

25   Mull*, No. CIV. 2:12-1422 WBS, 2012 WL 3233274, at *1–2 (E.D. Cal. Aug. 6, 2012) (same

26   result). That makes sense because "[w]hen tort suits against federal employees under [§] 2679(d)

27   are removed, . . . the entire state-court case is removed." 14C Wright & Miller, Fed. Prac. & Proc.

28   Juris. § 3726 (Rev. 4th ed. 2023).

United States District Court
Northern District of California

1    The present case can thus proceed in this court. The federal defendants raise some alternative

2  arguments, though.

3       They contend that the court lacks jurisdiction over the plaintiffs' claims for violations of

4  California statutes and San Francisco ordinances because — unlike the claims where federal

5  courts have exclusive jurisdiction (such that removal was proper) — the federal government has

6  not waived its sovereign immunity for these claims.[10] These claims, which are based on the

7  plaintiffs' lease agreement with the Presidio Trust, are for breach of the implied warranty of

8  habitability (premised on violations of the state statutes and local ordinances), breach of the

9  covenant of quiet enjoyment, and tenant harassment (in violation of a local rent ordinance).[11] The

10  federal defendants argue generally that the United States "has not waived sovereign immunity to

11  permit claims against it under state statutes, local codes, or local rent ordinances in any court."[12]

12       Before addressing that issue, there is a preliminary issue raised by the fact that the Presidio

13  Trust is a wholly owned government corporation. *Jordan v. Presidio Tr.*, No. 16-cv-02122-KAW,

14  2017 WL 5479607, at *1 (N.D. Cal. Nov. 15, 2017). Because there are two federal defendants (the

15  Trust and the United States), their sovereign immunity is not necessarily the same. *Keifer & Keifer*

16  *v. Reconstruction Fin. Corp.*, 306 U.S. 381, 389 (1939) ("Congress may, of course, endow a

17  governmental corporation with the government's immunity. But always the question is: has it

18  done so?").

19       "Jurisdiction over any suit against the Government requires a clear statement from [it] waiving

20  sovereign immunity, together with a claim falling within the terms of the waiver." *United States v.*

21  *White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (cleaned up). As for the Presidio Trust, it

22  "may sue and be sued in its own name to the same extent as the Federal Government," and "[t]he

23  District Court for the Northern District of California shall have exclusive jurisdiction over any suit

24

25

26  _____
    [10] Fed. Defs.' Mot. – ECF No. 17 at 14–15.

27  [11] Compl. – ECF No. 1-1 at 37–48 (¶¶ 78–147) (claims one through five); Residential Lease, Ex. B to
    Zack Decl. – ECF No. 17-3.

28  [12] Fed. Defs.' Mot. – ECF No. 17 at 14.

United States District Court
Northern District of California

filed against the Trust." Presidio Trust Act, Pub. L. No. 104-333 (1996) (section 104(h)) (codified as amended at 16 U.S.C. § 460bb appendix (2001)).

The plaintiffs contend that because the Presidio Trust Act provides that the Trust "may sue and be sued," the federal government has broadly waived its sovereign immunity with respect to the Trust.[13] Ordinarily, "[s]uch a sue-and-be-sued clause serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government." *Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1440 (2019). For example, the Tennessee Valley Authority Act "provides simply that the [Authority] '[m]ay sue and be sued.'" *Id.* (quoting 16 U.S.C. § 831c(b)). That is the case for almost all federal-government-owned corporations.[14] But the Presidio Trust Act is different: the Trust may be sued "to the same extent as the Federal Government." Presidio Trust Act (section 104(h)) (codified as amended at 16 U.S.C. § 460bb appendix). Thus, the federal government has waived the Trust's sovereign immunity only to the extent it has generally waived its sovereign immunity. That means the sovereign-immunity analysis is the same for both federal defendants here.

There are two "broad and important waivers [of sovereign immunity] that apply across" the federal government and are relevant here:

> The Federal Tort Claims Act, subject to various exceptions and procedural requirements, waives sovereign immunity for claims for money damages caused by tortious acts of its employees acting within the scope of their employment. For non-tortious claims, there is the Tucker Act, which both grants jurisdiction and waives sovereign immunity for actions seeking money damages founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

33 Wright & Miller, Fed. Prac. & Proc. Judicial Review § 8353 (2d ed. 2023) (cleaned up).

The issue, again, is whether these waivers apply to the plaintiffs' claims for breach of the implied warranty of habitability (premised on violations of the state statutes and local ordinances), breach of the covenant of quiet enjoyment, and tenant harassment (in violation of a local rent

---

[13] Opp'n – ECF No. 25 at 11–15.

[14] Fed. Defs.' Reply – ECF No. 37 at 7–8 (collecting examples).

United States District Court
Northern District of California

1   ordinance). It is true, as the federal defendants contend, that the government has not waived its

2   sovereign immunity from claims under state and local statutes and ordinances. That resolves at

3   least the tenant-harassment claim, which is purely a local-ordinance claim. *Larson v. City & Cnty.*

4   *of San Francisco*, 192 Cal. App. 4th 1263, 1273 (2011) (explaining San Francisco Rent Ordinance

5   § 37.10B, known as San Francisco's Proposition M). The other claims at issue, though, are for

6   breach of implied warranties and covenants in a contract between the plaintiffs and the Presidio

7   Trust. This raises the question of whether the Tucker Act applies because these claims are founded

8   on a contract with the United States (or rather the Trust, but again the Trust's sovereign immunity

9   is the same as the United States').

10      The court ordered supplemental briefing on this question. *See Nguyen v. Pelosi*, No. 20-cv-

11   08755-LHK, 2021 WL 2476836, at *1 (N.D. Cal. June 17, 2021) ("[S]overeign immunity goes to

12   a court's jurisdiction.") (cleaned up). The federal defendants pointed out that "courts have found

13   that a claim regarding the implied warranty of habitability is subject to the Tucker Act's waiver of

14   sovereign immunity," at least "[i]n the specific context of leases entered into by the Department of

15   Housing and Urban Development in accordance with its authorizing statute."[15] They also pointed

16   out that the Tucker Act does not create any substantive rights and that federal law, not state law,

17   "governs the interpretation of contracts entered into pursuant to federal law and to which the

18   government is a party."[16] *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th

19   Cir. 2005).

20      The fact that the Tucker Act does not create any substantive rights, and that federal common

21   law applies to the parties' lease agreement, is important here. The claims at issue depend on state-

22   specific common law. *See* 3-A Rutter Grp. Cal. Prac. Guide, Landlord-Tenant ¶ 3:1 (2023) ("In

23   the landmark case of *Green v. Superior Court*, the California Supreme Court held that a 'warranty

24   of habitability' is implied in all residential rental agreements.") (citing 10 Cal. 3d 616, 631

25   (1974)); *Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1300 (2014) ("[I]n the

26

27   _____

   [15] Fed. Defs.' Suppl. Br. – ECF No. 58 at 2–3.

28   [16] *Id.* at 3 n.1.

absence of language to the contrary, every lease contains an implied covenant of quiet enjoyment.") (cleaned up). The implied warranty of habitability additionally depends on violations of other state laws, such as health and safety codes. *Green*, 10 Cal. 3d at 637 ("In most cases substantial compliance with those applicable building and housing code standards which materially affect health and safety will suffice to meet the landlord's obligations under the common law implied warranty of habitability[.]"). The court thus concludes that the United States has not waived its sovereign immunity for these purely state-specific contract-based claims.

That said, another way of viewing this issue, given that the warranty of habitability and covenant of quiet enjoyment are alleged to be implied in a contract with the federal government, is through the Tucker Act's waiver of sovereign immunity for implied contractual provisions. The result is the same under this analysis.

"[T]he Tucker Act is encompassed in two statutes." 14 Wright & Miller, Fed. Prac. & Proc. Juris. § 3657 (4th ed. 2023). The Court of Federal Claims normally has exclusive jurisdiction over claims covered by the "Big Tucker Act," 28 U.S.C. § 1491, while district courts have concurrent jurisdiction over claims not exceeding $10,000 in value under the "Little Tucker Act," 28 U.S.C. § 1346. *Id.* (As the federal defendants point out, the Presidio Trust Act mandates that claims against the Trust be brought in this court, thus changing the venue mandate of the Big Tucker Act.[17] *Cf. Taylor Energy Co. v. United States*, 975 F.3d 1303, 1311 n.6 (Fed. Cir. 2020) (an agency decision that must be appealed to a district court is not reviewable in the Court of Federal Claims).) Under both statutes, plaintiffs may bring claims "against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2). "If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). This waiver is not specific to the Court of Federal Claims: "[t]he Tucker Act waives the government's immunity from suit on its contracts in any court to which Congress grants jurisdiction to hear the claim." *Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1574–78 (Fed. Cir. 1995).

---

[17] Fed. Defs.' Reply – ECF No. 37 at 10.

1     "To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the

2     contract must be between the plaintiff and the government and entitle the plaintiff to money

3     damages in the event of the government's breach of that contract." *Ransom v. United States*, 900

4     F.2d 242, 244 (Fed. Cir. 1990). A lease is, of course, a contract. *Prudential Ins. Co. of Am. v.*

5     *United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986). But the Tucker Act's contract-based

6     jurisdiction "extends only to contracts either express or implied in fact, and not to claims on

7     contracts implied in law." *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). And "[e]ach

8     material term or contractual obligation, as well as the contract as a whole, is subject to this

9     jurisdictional limitation." *Id.*

10         A contract implied in fact is "founded upon a meeting of minds" that is inferred "from conduct

11    of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.*

12    at 424 (cleaned up). For a contract implied in fact to exist, "all of the elements of an express

13    contract must be shown by the facts or circumstances surrounding the transaction — mutuality of

14    intent, offer and acceptance, authority to contract — so that it is reasonable, or even necessary, for

15    the court to assume that the parties intended to be bound." *Prudential Ins. Co.*, 801 F.2d at 1297.

16    "By contrast, an agreement implied in law is a fiction of law where a promise is imputed to

17    perform a legal duty, as to repay money obtained by fraud or duress." *Hercules*, 516 U.S. at 423

18    (cleaned up).

19         The implied warranty of habitability and the covenant of quiet enjoyment are implied in all

20    residential leases. *Green*, 10 Cal. 3d at 631; *Erlach*, 226 Cal. App. 4th at 1300. This is at least a

21    strong indication of being implied in law rather than in fact. *See Prudential Ins. Co.*, 801 F.2d at

22    1297–1300. It isn't dispositive, though: as a matter of contract interpretation, an implied-in-fact

23    agreement might simply arise from the nature of the contract at issue and thus always be present.

24    *Id.* The court thus considers whether that is the case here.

25         Courts have sometimes held universally implied covenants to be present in a contract with the

26    federal government if they are express or necessarily implied in the parties' lease. *See id.*

27    (inferring a covenant to vacate at the end of any fixed-term lease because "[a]s a matter of contract

28    interpretation," holding otherwise would have "the anomalous effect of voiding an express

United States District Court
Northern District of California

provision of the lease," namely "the ending date on which the lease expires"); *Griffin & Griffin Expl., LLC v. United States*, 116 Fed. Cl. 163, 175–76 (2014). Because this is a question of contract interpretation in the context of a federal contract, certain principles of the federal common law of contracts are relevant — and state law, including with respect to implied covenants, can be part of the analysis. "[I]n cases governed by federal common law, state law frequently provides the appropriate federal rule of decision." *Agnew v. Fed. Deposit Ins. Corp.*, 548 F. Supp. 1234, 1237 (N.D. Cal. 1982); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995) ("[i]n construing the terms of contracts that are governed by federal common law," courts are often "guided by common-sense canons of contract interpretation") (cleaned up). "[G]eneral rule[s] of landlord-tenant law, as applied between private parties," should sometimes be "taken into account," and this might include "a covenant, either express or implied, of all leases." *Prudential Ins. Co.*, 801 F.2d at 1298 (analyzing sovereign immunity in the Tucker Act context). Here, claim four for breach of the covenant of quiet enjoyment, at least, might fit this description. *See Erlach*, 226 Cal. App. 4th at 1299 (the covenant of quiet enjoyment "is breached upon actual or constructive eviction of the tenant," and is based on "[a]ny interference by the landlord that deprives the tenant of the beneficial enjoyment of the premises").

At least on this briefing, though, the court will not read a covenant of quiet enjoyment into the lease. The lease provided that the landlord "ma[de] no representation or warranty with regard to the environmental condition of the Premises," "state and local laws regarding leasehold rights and obligations do not apply," and the lease "constitute[d] the entire agreement" between the parties.[18] These provisions cut against the notion that the parties had a meeting of the minds with respect to a covenant of quiet enjoyment.

Granted, the lease also provided (in accordance with general principles of landlord-tenant law) that the property was to be the tenants' primary residence during the lease term.[19] Also, the plaintiffs assert a claim for constructive eviction (a concept that underpins the covenant of quiet

---

[18] Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3 at 7 (¶ 11), 13 (¶¶ 21.10–.11).

[19] *Id.* at 6 (¶ 9.1).

1   enjoyment) that the federal defendants did not move to dismiss. Arguably, then, the lease

2   necessarily implied a covenant of quiet enjoyment.

3       Still, the plaintiffs also assert a breach-of-contract claim that would appear to encompass the

4   essence of their covenant-of-quiet-enjoyment claim. The court's imposing a covenant of quiet

5   enjoyment would thus create an extra obligation outside the Tucker Act's waiver of sovereign

6   immunity. That is unlike *Prudential Insurance* and *Griffin & Griffin*, where an implied covenant

7   was read into the lease not as an extra claim but as a matter of contract interpretation to determine

8   whether a breach occurred. *Prudential Ins. Co.*, 801 F.2d at 1297–1300 (the court inferred an

9   implied covenant to vacate in the context of fixed-term lease where the government had held over

10  for about ten months); *Griffin & Griffin Expl.*, 116 Fed. Cl. at 175–76 (the lease provided for an

11  "exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas . . . in the

12  lands described" and the court inferred that the landlord warranted that it had "sufficient title to

13  lease all of the property for the term" where another company in fact still had mining rights).

14      For all of these reasons, the court dismisses the implied-warranty-of-habitability, covenant-of-

15  quiet-enjoyment, and tenant-harassment claims against the federal defendants. The dismissal is

16  without prejudice, except for the tenant-harassment claim which is dismissed with prejudice: it is

17  purely a state-law claim and no waiver of sovereign immunity applies to it.

18      Because the court has dismissed the plaintiffs' implied-in-law contract-based claims against

19  the federal defendants, the court need not reach the federal defendants' argument in their reply

20  brief concerning the federal-enclave doctrine.[20]

21      The next issue raised by the federal defendants is whether the court lacks subject-matter

22  jurisdiction over the tort claims to the extent they seek to hold the government liable for the

23  conduct of independent contractors (i.e., the non-government defendants). The contractors at issue

24  are The John Stewart Company and Enterprise Roofing.[21] The John Stewart Company is identified

27  [20] Fed. Defs.' Reply – ECF No. 37 at 13–14.

28  [21] Fed. Defs.' Mot. – ECF No. 17 at 15–18.

United States District Court
Northern District of California

1  in the plaintiffs' lease as the agent of the landlord, the Presidio Trust.[22] Enterprise Roofing

2  contracted with the Trust to perform the roof work.[23]

3      The FTCA covers injuries "caused by the negligent or wrongful act or omission of any

4  employee of the Government while acting within the scope of his office or employment." 28

5  U.S.C. § 1346(b)(1). It defines government employees to include officers and employees of "any

6  federal agency" but expressly excludes "any contractor with the United States." *Id.* § 2671; *Edison*

7  *v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

8      "A critical element in distinguishing an agency from a contractor is the power of the Federal

9  Government to control the detailed physical performance of the contractor." *United States v.*

10  *Orleans*, 425 U.S. 807, 814 (1976) (cleaned up). "Under the FTCA, the United States is subject to

11  liability for the negligence of an independent contractor only if it can be shown that the

12  government had authority to control the detailed physical performance of the contractor and

13  exercised substantial supervision over its day-to-day activities." *Laurence v. Dep't of Navy*, 59

14  F.3d 112, 113 (9th Cir. 1995) (citing *Orleans*, 425 U.S. at 814–15). This day-to-day control must

15  amount to substantial supervision. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).

16      Here, it is not clear that the plaintiffs seek to hold the government liable for The John Stewart

17  Company's conduct. For one, the Presidio Trust itself is identified as the landlord in the lease.

18  Also, the plaintiffs allege that they corresponded directly with Trust employees regarding

19  abatement of the lead contamination.[24] And for one of the negligence claims, the plaintiffs allege

20  that each defendant owed a non-delegable duty.[25] It may also be that the independent-contractor

21  exception to the FTCA does not apply here because of the peculiar-risk doctrine. *Edison*, 822 F.3d

22  at 518 n.4 (under the FTCA, the peculiar-risk doctrine creates "direct liability for the

23  government's nondelegable duty to ensure that the contractor employs proper safety procedures")

24  (cleaned up); *see Crimson Pipeline Mgmt., Inc. v. Herzog Contracting Corp.*, No. CV 12-3653-

25

26  [22] Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3 at 2, 15.

27  [23] Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2.

[24] *See, e.g.*, Compl. – ECF No. 1-1 at 29 (¶ 36).

28  [25] *Id.* at 57 (¶ 205).

United States District Court
Northern District of California

1   GHK (RZX), 2012 WL 13013025, at *2–3 (C.D. Cal. Oct. 10, 2012) (explaining the doctrine,

2   noting that "the applicability of the peculiar risk doctrine is a question of fact," and holding that "it

3   is at least plausible . . . that [the defendant] should have recognized the need for special

4   precautions during heavy construction near an oil pipeline").

5       The court also denies the government's motion to dismiss the negligence claim based on

6   Enterprise Roofing's conduct. The issue is whether the contract between the Trust and Enterprise

7   Roofing went so far as to "authorize the United States to physically supervise the [contractor]'s

8   employees," or if it merely authorized, for example, inspection by the United States "to determine

9   [the contractor's] compliance with the contract." *Orleans*, 425 U.S. at 815. Under the contract,

10  "[t]he Trust reserve[d] the right to set priority of activities and/or change schedule as necessary to

11  accommodate the Trust's construction activities," and "all work" was to be "conducted under the

12  general direction of the Contracting Officer and Trust Project Manager."[26] Enterprise Roofing was

13  required to "replace or correct work found by the Trust not to conform to contract requirements."[27]

14  The project schedule could be "updated and revised as required and approved by the Trust Project

15  Manager."[28] And "[t]he Trust Project Manager [was to] provide technical direction on contract

16  performance," defined as "[d]irection which assists the Contractor in accomplishing the Scope of

17  Work."[29] Taking these provisions together, and especially due to that last provision, the Trust

18  could "control the detailed physical performance of the contractor." *Id.* at 814; *Rabieh v. United*

19  *States*, No. 5:19-CV-00944-EJD, 2019 WL 5788673, at *7–8 (N.D. Cal. Nov. 6, 2019) (the

20  government's merely performing oversight to ensure compliance with contractual terms is not

21  enough, but "control over the physical performance of the contractor" is enough).

22      The final issue raised by the federal defendants is whether the plaintiffs are entitled to punitive

23  damages and a jury trial.[30] The court dismisses the claims for punitive damages for the alleged

24

25  [26] Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2 at 8–9.

    [27] *Id.* at 9.

26  [28] *Id.* at 8.

27  [29] *Id.* at 15.

    [30] Fed. Defs.' Mot. – ECF No. 17 at 18.

28

torts by the federal defendants. 28 U.S.C. § 2674 (under the FTCA, the government is not liable for punitive damages). As for a jury trial, the plaintiffs are not entitled to one (against the federal defendants at least) for either the FTCA or Tucker Act-based claims. 28 U.S.C. § 2402.

### 2.  Enterprise Roofing's Motion

Enterprise Roofing first contends that the negligent infliction of emotional distress and nuisance claims are duplicative of the negligence claim.[31] The court dismisses the negligent-infliction-of-emotional-distress claim against Enterprise Roofing as duplicative. *See, e.g.*, *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015).

As for the nuisance claim, courts sometimes "allow[] plaintiffs to litigate nuisance causes of action in cases involving housing conditions" where there is also a negligence claim. *El Escorial Owners' Assn. v. DLC Plastering, Inc.*, 154 Cal. App. 4th 1337, 1348 (2007). "But because of the broad definition of nuisance, whether a cause of action is viable depends on the facts of each case." *Id.* Where the "overriding issue" is a "traditional tort" like negligence, that traditional tort "should not be litigated under the guise of a nuisance action." *Id.* (cleaned up). In *El Escorial*, for example, the "overriding issue" was "toxic mold contamination due to negligent construction." *Id.* The "negligence and nuisance causes of action rel[ied] on the same facts about lack of due care," so "the nuisance claim [was] a negligence claim." *Id.* at 1349.

Here, the nuisance claim likewise is not distinct from the negligence claims. In support of the nuisance claim, the plaintiffs allege "toxic conditions" resulting from the defendants' alleged failures "to ensure certified workers performed work," "to ensure any protective measures were employed," and "to remediate lead-based paint and lead dust exposure."[32] This is a negligence claim, so the court dismisses it without prejudice.

Enterprise Roofing also contests the relief requested by the plaintiffs for their negligence claims, mainly on the ground that the federal-enclave doctrine precludes the plaintiffs' reliance on

---

[31] Enter. Roofing's Mot. – ECF No. 15 at 6–8.

[32] Compl. – ECF No. 1-1 at 51 (¶¶ 161, 163).

state and local laws for relief such as treble and punitive damages.[33] In opposition, the plaintiffs

discuss only the issue of sovereign immunity.[34]

"Under the Constitution, the United States has the power to acquire land from the states for

certain specified uses and to exercise exclusive jurisdiction over such lands, which are known as

federal enclaves." *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1034 (N.D. Cal. 2005).

Specifically, Article I "grants Congress the power to 'exercise exclusive legislation in all cases

whatsoever' over all places purchased with the consent of a state 'for the erection of forts,

magazines, arsenals, dock-yards, and other needful buildings.'" *Id.* The Presidio meets these

criteria: it was purchased from California in 1897 at a time that it was used as a military

reservation, and "exclusive jurisdiction over [the Presidio] was conferred upon the United States."

*Id.*; *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3383 EMC, 2014 WL 31434, at *4–13 (N.D.

Cal. Jan. 3, 2014); *Standard Oil Co. v. California*, 291 U.S. 242, 243–44 (1934).

If the federal government has exclusive jurisdiction within a federal enclave, then the law that

governs is usually only "(1) federal law and (2) state law as it existed before the enclave was

established." *Kasperzyk*, 2014 WL 31434, at *4. But subsequently enacted state laws apply when

Congress so provides. *Id.*

Here, as Enterprise Roofing points out, the state and local statutes and ordinances relied on by

the plaintiffs were enacted after 1897, when the Presidio was ceded to the federal government. The

plaintiffs address only sovereign immunity in their opposition. (They appear to confuse the federal-

enclave and sovereign-immunity doctrines.) Under the FTCA, there is a "government-contractor

defense" when, if "certain conditions are met[,] a government contractor enjoys derivative

sovereign immunity against tort actions arising out of the contractor's provision of services to the

government." *Bixby v. KBR, Inc.*, 748 F. Supp. 2d 1224, 1240 (D. Or. 2010). But that isn't the

defense Enterprise Roofing is asserting.

---

[33] Enter. Roofing's Mot. – ECF No. 15 at 8–10.

[34] Opp'n – ECF No. 26 at 10–14.

1    The court ordered supplemental briefing, though, on the applicability of 28 U.S.C. § 5001. "In a

2    civil action brought to recover on account of an injury sustained in a place [subject to the exclusive

3    jurisdiction of the United States within a State], the rights of the parties shall be governed by the

4    law of the State in which the place is located." *Id.* § 5001(b); *Kasperzyk*, 2014 WL 31434, at *11–

5    13 (analyzing 16 U.S.C. § 457, the predecessor to § 5001). This statute alters the usual application

6    of the federal-enclave doctrine. *Kasperzyk*, 2014 WL 31434, at *4. But to avoid abolishing the

7    federal-enclave doctrine, district courts have interpreted § 5001 to be limited to certain injuries. *Id.*

8    at *11–13 (limited to personal injury, i.e., physical or emotional injury but not economic injury);

9    *Shurow v. Gino Morena Enters.*, No. 3:16-CV-02844-L-KSC, 2017 WL 1550162, at *2–3 (S.D.

10   Cal. May 1, 2017) (limited to "physical injury to one's person"). The court adopts the reasoning of

11   *Kasperzyk* as persuasive and thus denies Enterprise Roofing's motion on the asserted federal-

12   enclave-doctrine ground, except to the extent that the claims at issue are for economic injury.

13   *Vasina v. Grumman Corp.*, 644 F.2d 112, 117–18 (2d Cir. 1981) ("The plain language of the

14   provision as drafted, and its later judicial construction, lead us to conclude that § 457 envisions the

15   application of the current substantive law of the surrounding state in actions for death or personal

16   injury occurring within a federal enclave.").

17   Enterprise Roofing raises some other challenges to the plaintiffs' requested relief.

18   It contends that because there is no contract between it and the plaintiffs, the plaintiffs are not

19   entitled to attorney's fees under Cal. Civ. Code § 1717.[35] That statute provides that "where [a]

20   contract specifically provides [for] attorney's fees and costs," the prevailing party is entitled to

21   those fees and costs. *Id.* § 1717(a). The plaintiffs are not entitled to these fees and costs.

22   Enterprise Roofing contends that the plaintiffs also are not entitled to attorney's fees under

23   Cal. Civ. Code § 1942.4.[36] That statute has to do with landlords, and Enterprise Roofing was not a

24   landlord. Thus, the plaintiffs are not entitled to these fees against Enterprise Roofing.

---

[35] Enter. Roofing's Mot. – ECF No. 15 at 10.

[36] *Id.*

United States District Court
Northern District of California

Finally, Enterprise Roofing moves for a more definite statement about whether the plaintiffs' minor daughter is a plaintiff: her name is in capital letters in the complaint, but no guardian ad litem has been appointed.[37] A party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The plaintiffs clarify that their daughter is not a plaintiff.[38] The motion is thus moot.

## CONCLUSION

The court denies the federal defendants' motion to dismiss based on the doctrine of derivative jurisdiction and its motion to dismiss the tort claims predicated on the conduct of The John Stewart Company and Enterprise Roofing, but otherwise grants the motion. The court grants Enterprise Roofing's motion to dismiss the emotional-distress and nuisance claims, the prayer for attorney's fees, and the prayer for treble and punitive damages (unless they are for economic injury). The motion for a more definite statement is moot. Any amended complaint must be filed within twenty-one days and must attach as an exhibit a blackline of the amended complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: December 1, 2023

_____
LAUREL BEELER
United States Magistrate Judge

[37] *Id.* at 11.

[38] Opp'n – ECF No. 26 at 4.

United States District Court
Northern District of California