UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

JAMES BREGAN, et al.,

　　　　　Plaintiffs,

　v.

THE JOHN STEWART COMPANY, et al.,

　　　　　Defendants.

Case No. 23-cv-01823-LB

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: ECF Nos. 15, 17

**INTRODUCTION AND STATEMENT**

　　The plaintiffs rented a home in the Presidio of San Francisco, a federal enclave administered by the Presidio Trust. In June 2021, the defendants allegedly performed a roof replacement without proper precautions, resulting in lead contamination from the home's lead paint, and then failed to properly remediate the contamination. The Bregan plaintiffs' young child tested positive for high lead levels in her blood.[1]

　　The plaintiffs sued five defendants: Enterprise Roofing Service (the company that contracted with the Presidio Trust to perform the roof work) and a group of "landlord defendants" consisting of the Trust (the landlord in the plaintiffs' lease), The John Stewart Company (the Trust's agent in

---

[1] Compl. – ECF No. 1-1 at 23–64. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

the lease), and Trust employees Mark Feickert and Van Cornwell. The plaintiffs assert eleven state-law claims sounding in tort and contract. They sued in state court. Because the Trust is a federal-government-owned corporation and Messieurs Feickert and Cornwell are federal employees, the Trust and the United States removed the case to federal court and the United States was substituted as a defendant for Messieurs Feickert and Cornwell.[2]

The federal defendants and Enterprise Roofing moved to dismiss the complaint. The federal defendants moved under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. They contend mainly that under the doctrine of derivative jurisdiction, which holds that federal courts sometimes lack jurisdiction in removed cases if the state court lacked jurisdiction, the state court lacked jurisdiction because the federal government has not waived its sovereign immunity for tort and contract claims in state courts. They contend in the alternative that (1) the claims premised on violations of state and local statutes and ordinances (such as breach of the implied warranty of habitability and the covenant of quiet enjoyment) fail because the federal government has not waived its sovereign immunity for those claims, (2) the court lacks jurisdiction over the tort claims to the extent they seek to hold the government liable for the conduct of the independent-contractor defendants, and (3) the plaintiffs are not entitled to punitive damages or a jury trial under the relevant federal statutes waiving sovereign immunity.[3]

Enterprise Roofing moved under Rule 12(b)(6) to dismiss (1) the negligent-infliction-of-emotional-distress and nuisance claims as duplicative of the negligence claim and (2) the prayer for attorney's fees and treble and punitive damages (based on state and local laws) as precluded by the federal-enclave doctrine. Enterprise Roofing also moved under Rule 12(e) for a more definite statement about whether the plaintiffs' minor daughter is a plaintiff.[4]

---

[2] *Id.*; Notice of Removal – ECF No. 1; Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2; Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3.

[3] Fed. Defs.' Mot. – ECF No. 17.

[4] Enter. Roofing's Mot. – ECF No. 15.

1    All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[5] The court

2    ordered supplemental briefing on certain issues raised by this complicated context.[6] The court held a

3    hearing on November 30, 2023.

4    The court grants the federal defendants' motion in part. The case may proceed as removed

5    notwithstanding the doctrine of derivative jurisdiction. The federal government has waived its

6    sovereign immunity for claims for breach of the implied warranty of habitability and the covenant

7    of quiet enjoyment and the court recognizes those claims as a matter of federal common law. The

8    plaintiffs are not entitled to a jury trial against the federal defendants or to punitive damages for

9    their tort claims against those defendants. Finally, the court denies the motion to dismiss the tort

10   claims predicated on the conduct of the independent-contractor defendants: (1) as to The John

11   Stewart Company, there are no allegations of the government's vicarious as opposed to direct

12   liability and the government may have owed non-delegable duties under the peculiar-risk doctrine;

13   and (2) as to Enterprise Roofing, the federal defendants had direct control over it.

14   The court also grants Enterprise Roofing's motion in part. The negligent-infliction-of-

15   emotional-distress and nuisance claims are duplicative of the negligence claim. The plaintiffs are

16   not entitled to attorney's fees and under the federal-enclave doctrine, they cannot recover treble

17   and punitive damages for economic injury (but can for personal injury). Finally, the court denies

18   the motion for a more definite statement as moot because the plaintiffs' daughter is not a plaintiff.

19

20                                    **STANDARDS OF REVIEW**

21   **1.  Subject-Matter Jurisdiction — Rule 12(b)(1)**

22   A complaint must contain a short and plain statement of the grounds for the court's

23   jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing

24   jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am.*

25   *Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

26

27   _____

     [5] Consents – ECF Nos. 9, 13, 14, 35.

28   [6] Order – ECF No. 53.

United States District Court
Northern District of California

1   A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227

2   F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are

3   themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's

4   allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News*

5   *Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). If the defendant mounts a factual attack, he

6   may rely on "affidavits or any other evidence properly before the court," in which case it

7   "becomes necessary for the party opposing the motion to present affidavits or any other evidence

8   necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter

9   jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In such cases, "[t]he

10  district court obviously does not abuse its discretion by looking to this extra-pleading material in

11  deciding the issue, even if it becomes necessary to resolve factual disputes." *Id.*

12      Dismissal of a complaint without leave to amend should be granted only when the jurisdictional

13  defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

14  (9th Cir. 2003).

15

16  **2.   Failure to State a Claim — Rule 12(b)(6)**

17      A complaint must contain a "short and plain statement of the claim showing that the pleader is

18  entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds

19  upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

20  (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal

21  theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank*

22  *N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

23      A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide

24  the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

25  formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

26  enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned

27  up). A complaint must contain factual allegations that, when accepted as true, are sufficient to

28  "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

United States District Court
Northern District of California

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

**ANALYSIS**

**1. The Federal Defendants' Motion**

The federal defendants first contend that under the doctrine of derivative jurisdiction, the court lacks jurisdiction because the state court lacked jurisdiction given that the United States has not waived its sovereign immunity for the plaintiffs' claims.[7]

---

[7] Fed. Defs.' Mot. – ECF No. 17 at 11–15.

United States District Court
Northern District of California

The federal defendants removed the case under 28 U.S.C. §§ 1442 and 2679(d)(2).[8] Section 1442 "permits removal of a civil action against 'any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office.'" *DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023) (cleaned up). Regarding § 2679(d)(2), "[u]nder the Federal Tort Claims Act, any civil action commenced in a state court shall be removed to the U.S. district court upon the Attorney General's certification that [a federal] defendant employee was acting within the scope of his office or employment." *Schmidt v. Washington*, No. C12-1116 MJP, 2012 WL 3234482, at *1 (W.D. Wash. Aug. 7, 2012). After removal and the Attorney General's certification, the United States is "substituted as the party defendant." *Richardson v. United States*, No. 19-cv-05144-JSW, 2020 WL 13517515, at *2 (N.D. Cal. Jan. 24, 2020) (quoting 28 U.S.C. § 2679(d)(2)). Here, the certification was filed on the same day as the notice of removal.[9]

Under the doctrine of derivative jurisdiction, a federal court is sometimes "without jurisdiction over a suit removed to it from state court if the state court from which it was removed lacked subject matter jurisdiction, even though the federal court would have had jurisdiction had the suit been brought there originally." *Beeman v. Olson*, 828 F.2d 620, 621 (9th Cir. 1987) (citing *Minnesota v. United States*, 305 U.S. 382, 389 (1939)). "The derivative-jurisdiction principle has been heavily criticized, largely because it produced the anomalous result that a case within the exclusive jurisdiction of the federal courts could not be removed to a federal court." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed. 2023). Thus, "in 1986, Congress abolished this rule" for cases removed under the general removal statute, 28 U.S.C. § 1441. *Id.*

The doctrine still applies to a removal under § 1442. *In re Elko Cnty. Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997); *FBI v. Super. Ct.*, 507 F. Supp. 2d 1082, 1090–92 (N.D. Cal. 2007). Whether it applies to removals under § 2679(d)(2) "is more questionable." *E.R. ex rel. Young v. Sutter Davis Hosp.*, No. CIV. 2:14-2053 WBS, 2014 WL 7239675, at *3 (E.D. Cal. Dec. 16, 2014). But although

---

[8] Notice of Removal – ECF No. 1 at 3 (¶ 6).

[9] Certification Pursuant to 28 U.S.C. § 2679(d) – ECF No. 2.

United States District Court
Northern District of California

courts have reached different results, the statute provides that if a government employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," then the case "shall be removed" to federal court. 28 U.S.C. § 2679(d)(2). Based on this language, courts have held that the derivative-jurisdiction doctrine does not apply to § 2679(d)(2). *Bryant v. Island Express Helicopters, Inc.*, No. CV208953FMOPVCX, 2021 WL 1734780, at *2 (C.D. Cal. May 3, 2021); *Johnson v. United States*, No. CV178125DMGMRWX, 2018 WL 5880138, at *2–3 (C.D. Cal. June 12, 2018). This is permissible even though federal courts have exclusive jurisdiction over FTCA cases because, "[a]s the Supreme Court has noted," it is after certification and removal that an action is "governed by the [FTCA]." *Bryant*, 2021 WL 1734780, at *2 (quoting *Osborn v. Haley*, 549 U.S. 225, 230 (2007)). Also, as shown by Congress's eliminating the derivative-jurisdiction doctrine for the general removal statute, Congress can provide for the doctrine's applicability, so Congress's specifying in § 2679(d)(2) that cases can be removed is dispositive.

The court thus holds that the derivative-jurisdiction doctrine does not apply to removals under § 2679(d)(2). This holding stands even though the Ninth Circuit, in the unpublished case *Rodriguez v. United States*, affirmed a dismissal of an FTCA action on derivative-jurisdiction grounds. 788 F. App'x 535, 536 (9th Cir. 2019). There, the government based its removal on § 1442, not § 2679(d). *Id.*

The question remains whether — given that the federal defendants relied on both §§ 1442 and 2679(d) and the derivative-jurisdiction doctrine applies to removals based on § 1442 — a partial dismissal is appropriate on the ground that certain claims or defendants are tethered to § 1442 as opposed to § 2679(d)(2) (which permits removal of tort claims). In *Bryant* and *Johnson*, the government "removed the action based on both §§ 2679(d) and 1442," and the result was that the derivative-jurisdiction doctrine did not apply. *Bryant*, 2021 WL 1734780, at *2 n.7; *Anselmo v. Mull*, No. CIV. 2:12-1422 WBS, 2012 WL 3233274, at *1–2 (E.D. Cal. Aug. 6, 2012) (same). That makes sense because "[w]hen tort suits against federal employees under [§] 2679(d) are removed, . . . the entire state-court case is removed." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3726 (Rev. 4th ed. 2023).

The present case can thus proceed in this court. The federal defendants make some alternative arguments, though.

They contend that the court lacks jurisdiction over the plaintiffs' claims for violations of California statutes and San Francisco ordinances because — unlike the claims where federal courts have exclusive jurisdiction such that removal was proper — the federal government has not waived its sovereign immunity for these claims at all.[10] This argument raises a preliminary issue that the court addresses first: because the Presidio Trust is a federal-government-owned corporation, its sovereign immunity is not necessarily the same as that of the United States (the other federal defendant here). *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 389 (1939) ("Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so?").

"Jurisdiction over any suit against the Government requires a clear statement from [it] waiving sovereign immunity, together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (cleaned up). As for the Presidio Trust, it "may sue and be sued in its own name to the same extent as the Federal Government," and "[t]he District Court for the Northern District of California shall have exclusive jurisdiction over any suit filed against the Trust." Presidio Trust Act, Pub. L. No. 104-333 (1996) (section 104(h)) (codified as amended at 16 U.S.C. § 460bb appendix (2001)).

The plaintiffs contend that because the Presidio Trust Act provides that the Trust "may sue and be sued," the federal government has broadly waived its sovereign immunity with respect to the Trust.[11] Ordinarily, "[s]uch a sue-and-be-sued clause serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government." *Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1440 (2019). For example, the Tennessee Valley Authority Act "provides simply that the [Authority] '[m]ay sue and be sued.'" *Id.* (quoting 16 U.S.C. § 831c(b)). That is the case for almost

---

[10] Fed. Defs.' Mot. – ECF No. 17 at 14–15.

[11] Opp'n – ECF No. 25 at 11–15.

United States District Court
Northern District of California

all federal-government-owned corporations.[12] But the Presidio Trust Act is different: the Trust may be sued "to the same extent as the Federal Government." Presidio Trust Act (section 104(h)) (codified as amended at 16 U.S.C. § 460bb appendix). Thus, the federal government has waived the Trust's sovereign immunity only to the extent it has generally waived its sovereign immunity. That means the sovereign-immunity analysis is the same for both federal defendants here.

The issue thus is, again, whether the federal government has waived its sovereign immunity for the plaintiffs' claims for violations of California statutes and San Francisco ordinances. These claims, which are based on the plaintiffs' lease agreement with the Presidio Trust, are for breach of the implied warranty of habitability (premised on violations of the state statutes and local ordinances), breach of the covenant of quiet enjoyment (premised on a state statute), and tenant harassment (premised on a local rent ordinance).[13] The federal defendants argue generally that the United States "has not waived sovereign immunity to permit claims against it under state statutes, local codes, or local rent ordinances."[14] The court grants the motion as to the tenant-harassment claim but denies it as to the covenant-of-quiet-enjoyment and implied-warranty-of-habitability claims.

There are two "broad and important waivers [of sovereign immunity] that apply across" the federal government and are relevant here:

> The Federal Tort Claims Act, subject to various exceptions and procedural requirements, waives sovereign immunity for claims for money damages caused by tortious acts of its employees acting within the scope of their employment. For non-tortious claims, there is the Tucker Act, which both grants jurisdiction and waives sovereign immunity for actions seeking money damages founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States[.]

33 Wright & Miller, Fed. Prac. & Proc. Judicial Review § 8353 (2d ed. 2023) (cleaned up).

---

[12] Fed. Defs.' Reply – ECF No. 37 at 7–8 (collecting examples).

[13] Compl. – ECF No. 1-1 at 37–48 (¶¶ 78–147) (claims one through five); Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3.

[14] Fed. Defs.' Mot. – ECF No. 17 at 14.

1   The court dismisses the tenant-harassment claim because it is purely a local-ordinance claim and

2   the federal government's waivers of sovereign immunity do not apply. *Larson v. City & Cnty. of*

3   *San Francisco*, 192 Cal. App. 4th 1263, 1273 (2011) (explaining San Francisco Rent Ordinance

4   § 37.10B, known as San Francisco's Proposition M). As for the warranty-of-habitability and

5   covenant-of-quiet-enjoyment claims, they are for breach of implied warranties and covenants in a

6   contract between the plaintiffs and the Presidio Trust. This raises the question of whether the

7   Tucker Act applies because these claims are founded on a contract with the United States (or rather

8   the Trust, but again the Trust's sovereign immunity is the same as the United States').

9       The court ordered supplemental briefing on this question. *See Nguyen v. Pelosi*, No. 20-cv-08755-

10  LHK, 2021 WL 2476836, at *1 (N.D. Cal. June 17, 2021) ("[S]overeign immunity goes to a court's

11  jurisdiction.") (cleaned up). The federal defendants pointed out that "courts have found that a claim

12  regarding the implied warranty of habitability is subject to the Tucker Act's waiver of sovereign

13  immunity," at least "[i]n the specific context of leases entered into by the Department of Housing and

14  Urban Development in accordance with its authorizing statute."[15] They also pointed out that the

15  Tucker Act does not create any substantive rights and that federal law, not state law, "governs the

16  interpretation of contracts entered into pursuant to federal law and to which the government is a

17  party."[16] *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1034 (9th Cir. 2005).

18      It is true that federal common law governs contract interpretation here and that the warranty-of-

19  habitability and covenant-of-quiet-enjoyment claims are based on state-specific common law. *See*

20  3-A Rutter Grp. Cal. Prac. Guide, Landlord-Tenant ¶ 3:1 (2023) ("In the landmark case of *Green v.*

21  *Superior Court*, the California Supreme Court held that a 'warranty of habitability' is implied in all

22  residential rental agreements.") (citing 10 Cal. 3d 616, 631 (1974)); *Erlach v. Sierra Asset*

23  *Servicing, LLC*, 226 Cal. App. 4th 1281, 1300 (2014) ("[I]n the absence of language to the contrary,

24  every lease contains an implied covenant of quiet enjoyment.") (cleaned up). The warranty of

25  habitability additionally depends on violations of other state laws, such as health and safety codes.

26

27  ---

[15] Fed. Defs.' Suppl. Br. – ECF No. 58 at 2–3.

28  [16] *Id.* at 3 n.1.

*Green*, 10 Cal. 3d at 637 ("In most cases substantial compliance with those applicable building and housing code standards which materially affect health and safety will suffice to meet the landlord's obligations under the common law implied warranty of habitability[.]"). But (as will be explained) federal common law can incorporate state law. And (again as will be explained) under the Tucker Act, there is a sovereign-immunity waiver for some implied contractual provisions, and it applies to these claims. This all raises a further issue: whether the court should, in fact, recognize these claims as incorporated into federal common law.

The next paragraphs unpack these points, starting with the Tucker Act's waiver of sovereign immunity for implied contractual provisions.

"[T]he Tucker Act is encompassed in two statutes." 14 Wright & Miller, Fed. Prac. & Proc. Juris. § 3657 (4th ed. 2023). The Court of Federal Claims normally has exclusive jurisdiction over claims covered by the "Big Tucker Act," 28 U.S.C. § 1491, while district courts have concurrent jurisdiction over claims not exceeding $10,000 in value under the "Little Tucker Act," 28 U.S.C. § 1346. *Id.* (As the federal defendants point out, the Presidio Trust Act mandates that claims against the Trust be brought in this court, thus changing the venue mandate of the Big Tucker Act.[17] *Cf. Taylor Energy Co. v. United States*, 975 F.3d 1303, 1311 n.6 (Fed. Cir. 2020) (an agency decision that must be appealed to a district court is not reviewable in the Court of Federal Claims).) "If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." *United States v. Mitchell*, 463 U.S. 206, 216 (1983).

Under both "Tucker Act" statutes, plaintiffs may bring claims "against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2). A lease is, of course, a contract. *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986). But the Tucker Act's contract-based jurisdiction "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). And "[e]ach material term or contractual obligation, as well as the contract as a whole, is subject to this jurisdictional limitation." *Id.*

---

[17] Fed. Defs.' Reply – ECF No. 37 at 10.

A contract implied in fact is "founded upon a meeting of minds" that is inferred "from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.* at 424 (cleaned up). For a contract implied in fact to exist, "all of the elements of an express contract must be shown by the facts or circumstances surrounding the transaction — mutuality of intent, offer and acceptance, authority to contract — so that it is reasonable, or even necessary, for the court to assume that the parties intended to be bound." *Prudential Ins. Co.*, 801 F.2d at 1297. "By contrast, an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress." *Hercules*, 516 U.S. at 423 (cleaned up).

The implied warranty of habitability and the covenant of quiet enjoyment are (under state common law) implied in all residential leases. *Green*, 10 Cal. 3d at 631; *Erlach*, 226 Cal. App. 4th at 1300. This does not necessarily mean they are implied in law rather than in fact. *See Prudential Ins. Co.*, 801 F.2d at 1297–1300. An implied-in-fact agreement might simply arise from the nature of the contract at issue and thus always be present. *Id.* Thus, courts have held implied covenants to be present in a lease agreement with the federal government because they were necessarily implied in the parties' lease. *See id.* (inferring a covenant to vacate at the end of any fixed-term lease because "[a]s a matter of contract interpretation," holding otherwise would have "the anomalous effect of voiding an express provision of the lease," namely "the ending date on which the lease expires"); *Griffin & Griffin Expl., LLC v. United States*, 116 Fed. Cl. 163, 175–76 (2014) (the lease provided for an "exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas . . . in the lands described" and the court inferred that the landlord warranted that it had "sufficient title to lease all of the property for the term" where another company in fact still had mining rights). Of course, the lease's various terms should be taken into account, given that an implied-in-fact agreement requires all of the usual elements of a valid contract (such as a meeting of the minds). *Prudential Ins. Co.*, 801 F.2d at 1297.

Here, the lease provided (in accordance with general principles of landlord-tenant law) that the property was to be the tenants' primary residence during the lease term.[18] Preliminarily, this indicates

---

[18] Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3 at 6 (¶ 9.1).

1   that the implied warranties at issue were implied in fact: this provision would not carry much

2   meaning if the premises were uninhabitable or the tenants were constructively evicted. *See Erlach*,

3   226 Cal. App. 4th at 1299 (the covenant of quiet enjoyment "is breached upon actual or constructive

4   eviction of the tenant," and is based on "[a]ny interference by the landlord that deprives the tenant of

5   the beneficial enjoyment of the premises"); *Stott v. Rutherford*, 92 U.S. 107, 109 (1875) ("The words

6   'grant' and 'demise' in a lease for years create . . . a covenant for quiet enjoyment.").

7        The lease also provided, however, that the landlord "ma[de] no representation or warranty with

8   regard to the environmental condition of the Premises," "state and local laws regarding leasehold

9   rights and obligations do not apply," and the lease "constitute[d] the entire agreement" between the

10  parties.[19] These provisions raise the question of whether the implied warranties at issue were waived

11  and thus there was no meeting of the minds. Another provision raises that issue even more directly:

12  the tenants agreed to hold the federal defendants harmless for any claim "arising out of . . . the

13  condition of the Premises during Tenant's occupancy or any occurrence on the Premises from any

14  cause whatsoever except to the extent caused by the gross negligence or willful misconduct of

15  Landlord (in which case Landlord shall be liable only to the extent provided by and in accordance

16  with the [FTCA])."[20] But under state law at least, the claims at issue can't be waived in the

17  residential context. *Green*, 10 Cal. 3d at 625 n.9; Cal. Civ. Code § 1942.1; *Lee v. Placer Title Co.*,

18  28 Cal. App. 4th 503, 512 n.6 (1994). (The court will address the role of state law shortly.)

19       Based on all of these considerations, the court concludes that the warranty of habitability and

20  the covenant of quiet enjoyment were implied in fact in the parties' lease. They are inherent in the

21  landlord-tenant relationship and nonwaivable. Thus, the federal defendants have waived their

22  sovereign immunity for these claims.

23       There is another question to be answered, though. Unlike in *Prudential Insurance* and *Griffin*

24  *& Griffin*, where an implied covenant was read into the lease as a matter of contract interpretation

25  to determine whether a breach of contract occurred, here the issue is whether the plaintiffs may

26

27  [19] *Id.* at 7 (¶ 11), 13 (¶¶ 21.10–.11).

28  [20] *Id.* at 8 (¶ 15.1).

*United States District Court*
*Northern District of California*

assert separate claims based on the implied covenants. Recognizing those claims would mean recognizing enforceable rights on the plaintiffs' part and corresponding obligations on the Trust's part — even though the Tucker Act does not create substantive rights and the parties' (federal-common-law-governed) contract purports to waive those rights and obligations. Whether the court should do so is really an issue of giving content to the law.

Notably, the relevant statute governing the parties' relationship is the Presidio Trust Act, which grants authority to the Trust to lease property. But the Act does not speak to the Trust's rights and obligations with respect to its residential leases. Instead, it generally provides that Trust can "establish procedures for lease agreements and other agreements for use and occupancy of Presidio facilities." Presidio Trust Act (section 104(a)–(b)) (codified as amended at 16 U.S.C. § 460bb appendix); *see id.* section 104(n) (providing that the Trust must prioritize certain prospective tenants). The court thus must decide how to fill the landlord-tenant "gap" left by this statute. *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973) ("[t]he inevitable incompleteness presented by all legislation means that interstitial federal [common] lawmaking" can be necessary).

Issues of federal common lawmaking arise when federal law applies but "[n]either the Constitution nor any federal statute provides the answer to [the] controvers[y]." 19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4514 (3d ed. 2023) (discussing *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 110 (1938)). The problem is often described as one of legislative gap-filling. *Little Lake Misere Land Co.*, 412 U.S. at 593. "The manifestations of this common-law power of the federal courts are extremely diverse and the governing principles amorphous." Wright & Miller, Juris. § 4514. But "[w]hen a court contemplates the invocation of federal common law, two discrete inquiries must be undertaken." *Id.* The first is "whether there is federal common lawmaking competence in the given context." *Id.* If so, the court must "determine the content of the federal principle" to be applied. *Id.*

Regarding the first inquiry, "[t]he competence to create federal common law has been recognized in certain classes of . . . cases." *Id.* One category is cases concerning "the proprietary interests of the United States[] or [cases] finding substantive rights or liabilities from vague or incomplete statutory text." *Id.* n.26 (citing Hart & Wechsler, The Federal Courts & the Federal System 635–42 (Fallon,

United States District Court
Northern District of California

1   Meltzer, Mishkin & Shapiro, 7th ed. 2015)); *United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 815

2   (D.C. Cir. 2022) ("[I]n cases involving the government's proprietary interests it has been clear that

3   federal courts have the 'competence' to create a federal common law rule.") (cleaned up). Put another

4   way, these are cases concerning "the rights and obligations of the United States." *Tex. Indus., Inc. v.*

5   *Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981).

6        The First Circuit's decision in *Conille v. Sec'y of Hous. & Urb. Dev.* illustrates these principles

7   in the (rare) context of federal-government residential leases. 840 F.2d 105 (1st Cir. 1988). There,

8   the plaintiff was a tenant in low-income housing that ended up being owned by the Department of

9   Housing and Urban Development. *Id.* at 107–08. The plaintiff asserted claims for breach of the

10  warranty of habitability and the covenant of quiet enjoyment. *Id.* at 108. The court noted that the

11  National Housing Act, which governs HUD's housing program, left open "[r]udimentary matters

12  underlying landlord-tenant relations such as obligations to pay rent, subleasing, and evictions." *Id.*

13  at 111. Thus the case, "involving a dispute over the obligations of the United States as a party to a

14  lease and no comprehensive legislative scheme or enforcement mechanism addressing the

15  particular matters at issue, present[ed] one of those instances in which a federal court is compelled

16  to fashion the applicable federal rule of decision." *Id.* at 111–12.

17       Here, because the Presidio Trust Act likewise does not establish the Trust's rights and

18  obligations with respect to its residential leases, the court has the "competence" to create a federal

19  common law rule.

20       The court therefore must "determine the content of the federal principle" to be applied. Wright

21  & Miller, Juris. § 4514. This decision "may be thought of as primarily a question of whether to

22  displace . . . forum state law." *Id.* (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994)).

23  "[F]or a number of years the Supreme Court has expressed a strong preference for the forum state's

24  law as the appropriate rule." *Id.*; *Agnew v. Fed. Deposit Ins. Corp.*, 548 F. Supp. 1234, 1237 (N.D.

25  Cal. 1982) ("[I]n cases governed by federal common law, state law frequently provides the

26  appropriate federal rule of decision."). But "[s]tate law should not be incorporated where doing so

27  would frustrate specific objectives of the [relevant] federal programs." *Wheeler v. City of Santa*

28  *Clara*, 894 F.3d 1046, 1056 (9th Cir. 2018) (cleaned up). Put another way, "[t]he federal courts will

United States District Court
Northern District of California

formulate a federal law that supersedes state law only when it relates to federal programs and actions where '[t]he desirability of a uniform rule is plain.'" *Dupnik v. United States*, 848 F.2d 1476, 1481 (9th Cir. 1988) (quoting *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 367 (1943)).

There is no reason to supersede state law in this case. For one thing, the Presidio is local to San Francisco and jurisdiction is limited to this court, so it's not the case that national policy is at stake. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) ("[F]ederal programs that by their nature are and must be uniform in character throughout the [n]ation necessitate formulation of controlling federal rules.") (cleaned up). Also, "a federal common law of landlord and tenant does not exist" and "[i]t is not to be expected that the federal courts would do a very good job of devising a model code of landlord-tenant law." *Powers v. U.S. Postal Serv.*, 671 F.2d 1041, 1045–46 (7th Cir. 1982).

It is true that in the context of HUD-owned housing under the National Housing Act, which is governed by detailed regulations that touch on landlord-tenant relations, some courts have fashioned a federal warranty of habitability or have incorporated state law in only a limited way. *Chase v. Theodore Mayer Bros.*, 592 F. Supp. 90, 96–100 (S.D. Ohio 1983) (noting that "contracts of the Federal Government are normally governed, not by the particular law of the states where they are made or performed, but by a uniform federal law," but also that the relevant statutes set out "detailed regulations" for HUD and that "the direct subjection of HUD to the myriad (and still developing) state landlord-tenant regulatory schemes creates a potential, yet real 'undue burden' on the Department's performance of its functions"); *Conille*, 840 F.2d at 111–17 (selectively incorporating Massachusetts law on the implied warranty of habitability because fully incorporating state law would have frustrated federal objectives present in the National Housing Act). Other courts, also in the HUD context, have rejected a separate claim for the warranty of habitability on the ground that the decision should be left to Congress because the claim overlaps with National Housing Act objectives. *Alexander v. U.S. Dep't of Hous. & Urb. Dev.*, 555 F.2d 166, 171 (7th Cir. 1977); *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566, 1574 (S.D. Fla. 1992) (following *Alexander*). Here, though, the local nature of the dispute, the Presidio Trust, and the relevant federal objectives counsel in favor of incorporating state law.

United States District Court
Northern District of California

1    This conclusion holds even though the federal government's contracts are governed by federal

2    law and that the contract at issue here purported to waive state-law claims other than those that are

3    cognizable under the FTCA. A contract "entered pursuant to federal law[] . . . implicates an area

4    of uniquely federal interest." *United States v. California Dep't of Transp.*, 693 F. Supp. 2d 1082,

5    1088–89 (N.D. Cal. 2009) (in a case concerning a federal right-of-way grant on the Presidio, the

6    court held that "federal law provides the rule of decision"); *Boyle v. United Techs. Corp.*, 487 U.S.

7    500, 504–07 & n.3 (1988). But that only leads back to the question of whether to incorporate state

8    law. *Boyle*, 487 U.S. at 504–07 & n.3. And having incorporated state law, the claims at issue can't

9    be waived (as already explained). The court thus denies the federal defendants' motion to dismiss

10   the warranty-of-habitability and covenant-of-quiet-enjoyment claims.

11   The federal defendants also challenge these claims based on the federal-enclave doctrine.[21]

12   The court resolves this issue the same way it does for Enterprise Roofing's motion, below: 28

13   U.S.C. § 5001 makes state law applicable, except with respect to economic damages.

14   The next issue raised by the federal defendants is whether the court lacks subject-matter

15   jurisdiction over the tort claims to the extent they seek to hold the government liable for the

16   conduct of independent contractors (i.e., the non-government defendants). The contractors at issue

17   are The John Stewart Company and Enterprise Roofing.[22] The John Stewart Company is identified

18   in the plaintiffs' lease as the agent of the landlord, the Presidio Trust.[23] Enterprise Roofing

19   contracted with the Trust to perform the roof work.[24]

20   The FTCA covers injuries "caused by the negligent or wrongful act or omission of any

21   employee of the Government while acting within the scope of his office or employment." 28

22   U.S.C. § 1346(b)(1). It defines government employees to include officers and employees of "any

23   federal agency" but expressly excludes "any contractor with the United States." *Id.* § 2671; *Edison*

24   *v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

---

[21] Fed. Defs.' Reply – ECF No. 37 at 13–14.

[22] Fed. Defs.' Mot. – ECF No. 17 at 15–18.

[23] Residential Lease, Ex. B to Zack Decl. – ECF No. 17-3 at 2, 15.

[24] Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. 807, 814 (1976) (cleaned up). "Under the FTCA, the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercised substantial supervision over its day-to-day activities." *Laurence v. Dep't of Navy*, 59 F.3d 112, 113 (9th Cir. 1995) (citing *Orleans*, 425 U.S. at 814–15). This day-to-day control must amount to substantial supervision. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).

Here, it is not clear that the plaintiffs seek to hold the government liable for The John Stewart Company's conduct. For one, the Presidio Trust itself is identified as the landlord in the lease. Also, the plaintiffs allege that they corresponded directly with Trust employees regarding abatement of the lead contamination.[25] And for one of the negligence claims, the plaintiffs allege that each defendant owed a non-delegable duty.[26] It may also be that the independent-contractor exception to the FTCA does not apply here because of the peculiar-risk doctrine. *Edison*, 822 F.3d at 518 n.4 (under the FTCA, the peculiar-risk doctrine creates "direct liability for the government's nondelegable duty to ensure that the contractor employs proper safety procedures") (cleaned up); *see Crimson Pipeline Mgmt., Inc. v. Herzog Contracting Corp.*, No. CV 12-3653-GHK (RZX), 2012 WL 13013025, at *2–3 (C.D. Cal. Oct. 10, 2012) (explaining the doctrine, noting that "the applicability of the peculiar risk doctrine is a question of fact," and holding that "it is at least plausible . . . that [the defendant] should have recognized the need for special precautions during heavy construction near an oil pipeline").

The court also denies the government's motion to dismiss the negligence claim based on Enterprise Roofing's conduct. The issue is whether the contract between the Trust and Enterprise Roofing went so far as to "authorize the United States to physically supervise the [contractor]'s employees," or if it merely authorized, for example, inspection by the United States "to determine

---

[25] *See, e.g.*, Compl. – ECF No. 1-1 at 29 (¶ 36).

[26] *Id.* at 57 (¶ 205).

[the contractor's] compliance with the contract." *Orleans*, 425 U.S. at 815. Under the contract, "[t]he Trust reserve[d] the right to set priority of activities and/or change schedule as necessary to accommodate the Trust's construction activities," and "all work" was to be "conducted under the general direction of the Contracting Officer and Trust Project Manager."[27] Enterprise Roofing was required to "replace or correct work found by the Trust not to conform to contract requirements."[28] The project schedule could be "updated and revised as required and approved by the Trust Project Manager."[29] And "[t]he Trust Project Manager [was to] provide technical direction on contract performance," defined as "[d]irection which assists the Contractor in accomplishing the Scope of Work."[30] Taking these provisions together, and especially due to that last provision, the Trust could "control the detailed physical performance of the contractor." *Id.* at 814; *Rabieh v. United States*, No. 5:19-CV-00944-EJD, 2019 WL 5788673, at *7–8 (N.D. Cal. Nov. 6, 2019) (the government's merely performing oversight to ensure compliance with contractual terms is not enough, but "control over the physical performance of the contractor" is enough).

The final issue raised by the federal defendants is whether the plaintiffs are entitled to punitive damages and a jury trial.[31] The court dismisses the claims for punitive damages for the alleged torts by the federal defendants. 28 U.S.C. § 2674 (under the FTCA, the government is not liable for punitive damages). As for a jury trial, the plaintiffs are not entitled to one (against the federal defendants at least) for either the FTCA or Tucker Act-based claims. 28 U.S.C. § 2402.

## 2.  Enterprise Roofing's Motion

Enterprise Roofing first contends that the negligent infliction of emotional distress and nuisance claims are duplicative of the negligence claim.[32] The court dismisses the negligent-

---

[27] Contract for Roof Replacement, Ex. A to Zack Decl. – ECF No. 17-2 at 8–9.

[28] *Id.* at 9.

[29] *Id.* at 8.

[30] *Id.* at 15.

[31] Fed. Defs.' Mot. – ECF No. 17 at 18.

[32] Enter. Roofing's Mot. – ECF No. 15 at 6–8.

United States District Court
Northern District of California

infliction-of-emotional-distress claim as duplicative. *See, e.g.*, *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015).

As for the nuisance claim, courts sometimes "allow[] plaintiffs to litigate nuisance causes of action in cases involving housing conditions" where there is also a negligence claim. *El Escorial Owners' Assn. v. DLC Plastering, Inc.*, 154 Cal. App. 4th 1337, 1348 (2007). "But because of the broad definition of nuisance, whether a cause of action is viable depends on the facts of each case." *Id.* Where the "overriding issue" is a "traditional tort" like negligence, that traditional tort "should not be litigated under the guise of a nuisance action." *Id.* (cleaned up). In *El Escorial*, for example, the "overriding issue" was "toxic mold contamination due to negligent construction." *Id.* The "negligence and nuisance causes of action rel[ied] on the same facts about lack of due care," so "the nuisance claim [was] a negligence claim." *Id.* at 1349.

Here, the nuisance claim likewise is not distinct from the negligence claims. In support of the nuisance claim, the plaintiffs allege "toxic conditions" resulting from the defendants' alleged failures "to ensure certified workers performed work," "to ensure any protective measures were employed," and "to remediate lead-based paint and lead dust exposure."[33] This is a negligence claim, so the court dismisses it without prejudice.

Enterprise Roofing also contests the relief requested by the plaintiffs for their negligence claims, mainly on the ground that the federal-enclave doctrine precludes the plaintiffs' reliance on state and local laws for relief such as treble and punitive damages.[34] In opposition, the plaintiffs discuss only the issue of sovereign immunity.[35]

"Under the Constitution, the United States has the power to acquire land from the states for certain specified uses and to exercise exclusive jurisdiction over such lands, which are known as federal enclaves." *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1034 (N.D. Cal. 2005). Specifically, Article I "grants Congress the power to 'exercise exclusive legislation in all cases

---

[33] Compl. – ECF No. 1-1 at 51 (¶¶ 161, 163).

[34] Enter. Roofing's Mot. – ECF No. 15 at 8–10.

[35] Opp'n – ECF No. 26 at 10–14.

1  whatsoever' over all places purchased with the consent of a state 'for the erection of forts,

2  magazines, arsenals, dock-yards, and other needful buildings.'" *Id.* The Presidio meets these

3  criteria: it was purchased from California in 1897 at a time that it was used as a military

4  reservation, and "exclusive jurisdiction over [the Presidio] was conferred upon the United States."

5  *Id.*; *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3383 EMC, 2014 WL 31434, at *4–13 (N.D.

6  Cal. Jan. 3, 2014); *Standard Oil Co. v. California*, 291 U.S. 242, 243–44 (1934).

7       If the federal government has exclusive jurisdiction within a federal enclave, then the law that

8  governs is usually only "(1) federal law and (2) state law as it existed before the enclave was

9  established." *Kasperzyk*, 2014 WL 31434, at *4. But subsequently enacted state laws apply when

10  Congress so provides. *Id.*

11       Here, as Enterprise Roofing points out, the state and local statutes and ordinances relied on by

12  the plaintiffs were enacted after 1897, when the Presidio was ceded to the federal government. The

13  plaintiffs address only sovereign immunity in their opposition. (They appear to confuse the federal-

14  enclave and sovereign-immunity doctrines.) Under the FTCA, there is a "government-contractor

15  defense" when, if "certain conditions are met[,] a government contractor enjoys derivative

16  sovereign immunity against tort actions arising out of the contractor's provision of services to the

17  government." *Bixby v. KBR, Inc.*, 748 F. Supp. 2d 1224, 1240 (D. Or. 2010). But that isn't the

18  defense Enterprise Roofing is asserting.

19       The court ordered supplemental briefing, though, on the applicability of 28 U.S.C. § 5001. "In a

20  civil action brought to recover on account of an injury sustained in a place [subject to the exclusive

21  jurisdiction of the United States within a State], the rights of the parties shall be governed by the

22  law of the State in which the place is located." *Id.* § 5001(b); *Kasperzyk*, 2014 WL 31434, at *11–

23  13 (analyzing 16 U.S.C. § 457, the predecessor to § 5001). This statute alters the usual application

24  of the federal-enclave doctrine. *Kasperzyk*, 2014 WL 31434, at *4. But to avoid abolishing the

25  federal-enclave doctrine, district courts have interpreted § 5001 to be limited to certain injuries. *Id.*

26  at *11–13 (limited to personal injury, i.e., physical or emotional injury but not economic injury);

27  *Shurow v. Gino Morena Enters.*, No. 3:16-CV-02844-L-KSC, 2017 WL 1550162, at *2–3 (S.D.

28  Cal. May 1, 2017) (limited to "physical injury to one's person"). The court adopts the reasoning of

United States District Court
Northern District of California

*Kasperzyk* as persuasive and thus denies Enterprise Roofing's motion on the asserted federal-enclave-doctrine ground, except to the extent that the claims at issue are for economic injury. *Vasina v. Grumman Corp.*, 644 F.2d 112, 117–18 (2d Cir. 1981) ("The plain language of the provision as drafted, and its later judicial construction, lead us to conclude that § 457 envisions the application of the current substantive law of the surrounding state in actions for death or personal injury occurring within a federal enclave.").

Enterprise Roofing raises some other challenges to the plaintiffs' requested relief.

It contends that because there is no contract between it and the plaintiffs, the plaintiffs are not entitled to attorney's fees under Cal. Civ. Code § 1717.[36] That statute provides that "where [a] contract specifically provides [for] attorney's fees and costs," the prevailing party is entitled to those fees and costs. *Id.* § 1717(a). The plaintiffs are not entitled to these fees and costs.

Enterprise Roofing also contends that the plaintiffs also are not entitled to attorney's fees under Cal. Civ. Code § 1942.4.[37] That statute has to do with landlords, and Enterprise Roofing was not a landlord. Thus, the plaintiffs are not entitled to these fees against Enterprise Roofing.

Finally, Enterprise Roofing moves for a more definite statement about whether the plaintiffs' minor daughter is a plaintiff: her name is in capital letters in the complaint, but no guardian ad litem has been appointed.[38] A party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The plaintiffs clarify that their daughter is not a plaintiff.[39] The motion is thus moot.

## CONCLUSION

The court denies the federal defendants' motion to dismiss based on the doctrine of derivative jurisdiction, their motion to dismiss the tort claims predicated on the conduct of The John Stewart Company and Enterprise Roofing, and their motion to dismiss the implied-warranty-of-habitability

---

[36] Enter. Roofing's Mot. – ECF No. 15 at 10.

[37] *Id.*

[38] *Id.* at 11.

[39] Opp'n – ECF No. 26 at 4.

and covenant-of-quiet-enjoyment claims. The court grants their motion as to punitive damages and a jury trial. The court also grants Enterprise Roofing's motion to dismiss the emotional-distress and nuisance claims, the prayer for attorney's fees, and the prayer for treble and punitive damages (unless they are for economic injury). The motion for a more definite statement is moot. Any amended complaint must be filed within three weeks and must attach as an exhibit a blackline of the amended complaint against the current complaint.

This resolves ECF Nos. 15 and 17.

**IT IS SO ORDERED.**

Dated: February 19, 2024

_____
LAUREL BEELER
United States Magistrate Judge